## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| METINVEST B.V.,[1] | Case No. 17-_____ (___) |
| Debtor in a Foreign Proceeding. | |

## MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION
## FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Joseph M. Barry (Del. Bar No. 4221)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ALLEN & OVERY LLP
Daniel Guyder (admitted *pro hac vice*)
Mark Nixdorf (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York, 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Attorneys for the Foreign Representative of the Debtor*

Dated:  January 17, 2017

---

[1]    The last four digits of the Metinvest B.V. United States Tax Identification Number are 3839.  The address of the registered office of Metinvest B.V. is Nassaulaan 2A, 2514 JS, 'S-Gravenhage, The Netherlands.

01:21440077.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

JURISDICTION AND VENUE ............................................................................................... 5

FACTUAL BACKGROUND ..................................................................................................... 6

ARGUMENT ............................................................................................................................ 6

**I. The English Proceeding Is Entitled to Recognition as a Foreign Nonmain Proceeding** ......... 6

   A.    The Case Concerns a "Foreign Proceeding" ........................................................... 7

   B.    This Case was Commenced by a "Foreign Representative" ................................... 8

   C.    This Case was Properly Commenced under Chapter 15 .......................................... 9

   D.    The English Proceeding Should be Recognized as a Foreign Nonmain Proceeding ............... 9

   E.    The Foreign Representative Is Entitled to an Order Granting Recognition of the English Proceeding as a Foreign Nonmain Proceeding ................................... 11

**II. The Foreign Representative is Entitled to an Order Enforcing the Scheme** ........................ 12

   A.    The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the Bankruptcy Code ............................................................................. 13

   B.    Enforcement of the Scheme is Warranted under Section 1521 of the Bankruptcy Code ...... 15

   C.    The Enforcement of the Schemes is Warranted under Section 1507 of the Bankruptcy Code ................................................................................. 17

   D.    The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code .................. 18

**III. CONCLUSION** ................................................................................................................ 21

01:21440077.1

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV),*
    701 F.3d 1031 (5th Cir. 2012) ................................................................. 11, 12, 15, 16

*Canada S. Ry. Co. v. Gebhard,*
    109 U.S. 527 (1883) ................................................................................................ 14

*Collins v. Oilsands Quest, Inc.,*
    484 B.R. 593 (S.D.N.Y. 2012) ................................................................................ 11

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB,*
    773 F.2d 452 (2d Cir. 1985) .................................................................................... 13

*Hilton v. Guyot,*
    159 U.S. 113 (1895) ................................................................................................ 16

*Iida v. Kitahara (In re Iida),*
    377 B.R. 243 (9th Cir. BAP 2007) ......................................................................... 17

*In re Atlas Shipping A/S,*
    404 B.R. 726 (Bankr. S.D.N.Y. 2009) ................................................................... 10

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.,*
    238 B.R. 25 (Bankr. S.D.N.Y. 1999), aff'd, 238 B.R. 699 (S.D.N.Y. 2002) ...................................... 11

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
    374 B.R. 122 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008) ................................. 7, 8

*In re Ephedra Prods. Liab. Litig.,*
    349 B.R. 333 (S.D.N.Y. 2006) ................................................................................ 16

*In re Fairfield Sentry Ltd.,*
    484 B.R. 615 (Bankr. S.D.N.Y. 2013) ................................................................... 11

*In re Fairfield Sentry Ltd.,*
    No. 10-13164, 2011 U.S. Dist. LEXIS 105770 (S.D.N.Y. Sept. 15, 2011) ............................ 8

*In re Gold & Honey, Ltd.,*
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) ................................................................... 16

*In re Hellas Telecom. (Luxembourg) V,*
    Case No. 10-13651 (Bankr. D. Del. December 13, 2010) .......................................... 6

*In re Hibu Inc., et al.,*
    Case No. 14-70323 (Bankr. E.D.N.Y. February 27, 2014) ....................................... 6

*In re Magyar Telecom B.V.,*
    Case No. 13-13508 (Bankr. S.D.N.Y. December 11, 2013) ...................................... 6

01:21440077.1

*In re Metcalfe & Mansfield Alternative Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ................................................................ 16

*In re Metinvest B.V.*,
    Case No. 16-10105 (LSS) (Bankr. D. Del. February 8, 2016) ............................. 6

*In re Metinvest B.V.*,
    Case No. 16-11424 (LSS) (Bankr. D. Del. June 30, 2016) ................................. 6

*In re Qimonda AG*,
    433 B.R. 547 (Bankr. E.D. Va. 2010) ................................................................ 17

*In re Tokio Marine Europe Ins. Ltd.*,
    Case No. 11-13420 (MG) (Bankr. S.D.N.Y. September 8, 2011) ........................ 6

*In re Tri-Continental Exch. Ltd.*,
    349 B.R. 627 (Bankr. E.D. Cal. 2006) ............................................................... 14

*In re Zlomrex Int'l Finance S.A.*,
    Case No. 13-14138 (Bankr. S.D.N.Y. January 31, 2014) ................................... 6

*In re Zodiac Pool Solutions, SAS, et al.*,
    Case No. 14-11818 (KJC) (Bankr. D. Del. August 29, 2014) ............................. 6

*Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ....................................................................... 10, 13

**Statutes**

8 Del. C. Section 169 ..................................................................................................... 4

11 U.S.C. § 1501(b)(l) ................................................................................................... 4

11 U.S.C. § 1507........................................................................................... 3, 12, 15, 16

11 U.S.C. § 1517(b)(2) .................................................................................................. 8

11 U.S.C. §§ 1521, 1522 .............................................................................................. 11

28 U.S.C. §§ 157 and 1334 ........................................................................................... 3

28 U.S.C. § 157(b)(2)(P)............................................................................................... 3

28 U.S.C. § 1410(1) and (3)........................................................................................... 3

**Other Authorities**

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88..................................... 10

Svitlana Romanova is the duly appointed foreign representative (the "**Foreign Representative**") of Metinvest B.V. (the "**Debtor**"), a private limited liability company incorporated under the laws of the Netherlands, in connection with a proceeding (the "**English Proceeding**") concerning a scheme of arrangement (the "**Scheme**") under part 26 of the English Companies Act 2006 (as amended, the "**English Companies Act**") currently pending before the High Court of Justice of England and Wales (the "**High Court**").

The Foreign Representative has commenced this chapter 15 case ancillary to the English Proceeding by the filing of *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Petition**")[2] with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") seeking the entry of an order (i) recognizing the English Proceeding as a "foreign nonmain proceeding," and (ii) giving full force and effect to the Scheme in the United States if such Scheme is duly approved by the requisite majority of affected creditors and sanctioned by the High Court in accordance with the English Companies Act.

In support thereof, the Foreign Representative respectfully submits this memorandum of law and states as follows:

### PRELIMINARY STATEMENT

The Debtor and its subsidiaries (the "**Metinvest Group**") are, collectively, the largest vertically integrated mining and steel business in Ukraine.  The substantial and ongoing civil disturbances, political instability, and military action in the country since the end of 2013 have negatively impacted Ukraine's economy and the relations between the Russian Federation and Ukraine, and, as a result, the Metinvest Group's business, results of operations and financial

---

[2]    Capitalized terms used but not defined herein have the meanings assigned to them in the Petition.

condition.  In addition, the Metinvest Group has suffered from the protracted depressed market prices for coal and iron ore throughout much of 2014 and into 2015.  Since February 2016, steel, iron ore and coking coal prices have recovered to some extent but have remained volatile.  Further, the geopolitical tensions in Ukraine have decreased demand from the global investor base in the region, and the Debtor has therefore been unable to obtain funding from the international or domestic capital and debt markets to refinance existing indebtedness.  The combination of decreased earnings from operations and the inability to raise new capital has created a liquidity crisis for the Debtor rendering it unable to repay its debts at this time and maintain operations.  The Debtor does not expect any material and sustainable improvement in its overall liquidity before 2018.

On June 26, 2015, the Debtor successfully obtained a consensual waiver in respect of three series of Eurobond notes with an aggregate outstanding principal amount of approximately $1.19 billion (the "**Notes**").[3]  However, one series of the Notes issued in an aggregate principal amount of $500 million (approximately $90 million remains outstanding),[4] and bearing interest at an annual rate of 10.25%, which was originally scheduled to mature on May 20, 2015 and deferred in the consensual waiver, matured on January 31, 2016.  In order to continue negotiations toward a comprehensive debt restructuring, the Debtor obtained relief from the High Court through a scheme of arrangement on January 29, 2016 which provided a moratorium on enforcement action by holders of the Notes through May 27, 2016 (the "**First Moratorium Scheme**").  This Court entered an order giving full force and effect to the First Moratorium Scheme in the United States and recognizing the associated proceeding before the

---

[3]    Amount calculated as of November 30, 2016 and includes capitalization of unpaid interest in accordance with the First Moratorium Scheme (defined below).

[4]    Amount calculated as of November 30, 2016 and includes capitalization of unpaid interest in accordance with the First Moratorium Scheme.

High Court as a foreign nonmain proceeding on February 8, 2016.  *See In re Metinvest B.V.*, Case No. 16-10105 (LSS) (Bankr. D. Del. Feb. 8, 2016) [D.I. 34].

On June 8, 2016 the Foreign Representative filed a petition in this Court seeking, among other things, enforcement of the Debtor's scheme of arrangement (the "**Second Moratorium Scheme**") under the English Companies Act which was sanctioned by the High Court on June 30, 2016 and provided for a moratorium against enforcement action by holders of the Notes in respect of certain events of default through September 30, 2016 (subject to extension to November 30, 2016 at the latest, or early termination in each case in accordance with terms in the Scheme).  On June 30, 2016, this Court approved the petition and entered an order giving full force and effect to the Second Moratorium Scheme in the United States.  *See In re Metinvest B.V.*, Case No. 16-11424 (LSS) (Bankr. D. Del. June 30, 2016) [D.I. 24].  On September 28, 2016, holders representing at least 50.01% of the aggregate outstanding principal amount of the Notes delivered an extension notice to the Debtor thereby extending the standstill under the Second Moratorium Scheme through November 30, 2016.

On December 1, 2015 the Debtor entered into a standstill agreement (effective as of December 22, 2015) (the "**PXF Standstill**") in respect of four pre-export finance facilities obtained in 2011, 2012, and 2013 with an aggregate principal amount outstanding of approximately $1.1 billion (the "**PXF Facilities**") which provided for forbearance on enforcement action or the initiation of insolvency proceedings by the PXF Lenders who signed the PXF Standstill until January 29, 2016.  The PXF Standstill Agreement was extended in accordance with its terms through a series of extension agreements through November 30, 2016.

Due to the expiry of the Second Moratorium Scheme and the PXF Standstill, various defaults and cross-defaults provide bases for holders of the Notes and other creditors to accelerate outstanding obligations and pursue remedies against the Debtor.  Without further relief to approve the Restructuring Proposal (defined below) and to enforce such proposal, the Debtor could be forced to cease operations and ultimately liquidate assets at forced sale values to the detriment of all stakeholders.

The First and Second Moratorium Schemes and the PXF Standstill provided the Debtor with the stability necessary to negotiate a comprehensive restructuring of its indebtedness, as set forth in a non-binding heads of terms (the "**Non-Binding Heads of Terms**") appended to the Second Moratorium Scheme, and preserved operations for the benefit of all stakeholders.  The purpose of this Scheme is to implement a restructuring proposal (the "**Restructuring Proposal**") in relation to the Notes and PXF Facilities which has now been fully negotiated and documented and based substantially on the Non-Binding Heads of Terms.

The Foreign Representative has commenced this chapter 15 case seeking aid in respect of the English Proceeding to ensure the successful implementation of the Scheme. Chapter 15 of the Bankruptcy Code authorizes this Court to (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a case and (ii) grant assistance in the United States to such foreign representative with respect to the foreign proceeding, including providing "appropriate relief" pursuant to section 1521 and "additional assistance" pursuant to section 1507.

In that regard, the Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code; as the English Proceeding is a foreign proceeding before the High Court involving a company with an establishment in England, it is entitled to the recognition and

relief provided by chapter 15.  Moreover, because the Debtor has property in the United States, specifically a subsidiary incorporated in Delaware, the Foreign Representative believes that giving full force and effect to the Scheme in the United States will best assure the effective execution of the Scheme in accordance with the principles underlying chapter 15 of the Bankruptcy Code.  Finally, such relief is consistent with the relief afforded by United States courts in other ancillary chapter 15 cases involving proceedings under the English Companies Act.

Accordingly, the Foreign Representative submits that granting the Petition is just and proper under chapter 15 of the Bankruptcy Code.

### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) and (3) because the Debtor's principal asset in the United States is the shares of capital stock it owns in Metinvest US Inc., a Delaware Corporation, which is deemed to be located in Delaware,[5] and it is otherwise consistent with the interests of justice and convenience of the parties, having regard for the relief sought by the Foreign Representative.  The statutory predicates for the relief requested herein are sections 105(a), 1507, 1515, 1517, and 1521 of the Bankruptcy Code.

---

[5]    8 Del. C. Section 169.

01:21440077.1

5

## FACTUAL BACKGROUND

1.      For a detailed description of the Debtor's business, operations, capital structure, corporate organization, and circumstances leading to the Scheme, the Court is respectfully referred to the Petition.

## ARGUMENT

### I.
### THE ENGLISH PROCEEDING IS ENTITLED
### TO RECOGNITION AS A FOREIGN NONMAIN PROCEEDING

2.      The English Proceeding is substantially identical to the proceedings in respect of the First Moratorium Scheme and the Second Moratorium Scheme that this Court recognized as foreign nonmain proceedings on February 8, 2016 and June 30, 2016 respectively. *See In re Metinvest B.V.*, Case No. 16-10105 (LSS) (Bankr. D. Del. Feb. 8, 2016) [D.I. 34]; *In re Metinvest B.V.*, Case No. 16-11424 (LSS) (Bankr. D. Del. June 30, 2016) [D.I. 24].  Moreover, it is worth noting that none of the Debtor's creditors raised an objection to the First Moratorium Scheme or the Second Moratorium Scheme, including with respect to recognition matters.

3.      Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l).  The English Proceeding is entitled to recognition as a "foreign nonmain proceeding" under chapter 15 of the Bankruptcy Code because, among other things:

        (A)      the English Proceeding is (i) a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code and (ii) a "foreign nonmain proceeding" within the meaning of section 1502(5) of the Bankruptcy Code because the English Proceeding is pending in a jurisdiction where the Debtor maintains an "establishment" within the meaning of section 1502(2) of the Bankruptcy Code;

(B)    the Foreign Representative is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

(C)    the Petition was filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

(D)    the Petition meets the requirements of sections 1504 and 1515 of the Bankruptcy Code.

A.    The Case Concerns a "Foreign Proceeding"

4.    The English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code, which provides, in pertinent part, that:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  These requirements are satisfied by the English Proceeding.

5.    First, the English Proceeding is a collective judicial proceeding in England because the Scheme is subject to the approval of the Scheme Creditors who are authorized to vote on the Scheme by virtue of the Convening Order issued by the High Court.  Moreover, even with the approval of Scheme Creditors, the effectiveness and implementation of the Scheme is subject to a second hearing before the High Court to consider sanctioning the Scheme and will be subject to delivery of the resultant Sanction Order to the Registrar of Companies in England and Wales.  Further, the High Court has exclusive jurisdiction to hear and determine any suit, action, claim, or proceeding and to settle any dispute which may arise out of any action taken or omitted to be taken under the Scheme or in connection with the administration of the Scheme.

01:21440077.1

6.      Second, the English Proceeding is for the purpose of "reorganization" in that it provides for the implementation of a Restructuring Proposal to amend and extend certain of the Debtors' outstanding debt.  Furthermore, the Scheme was duly proposed pursuant to part 26 of the English Companies Act, a law relating, among other matters, to the adjustment of debt. Thus, the English Proceeding is a "foreign proceeding" under the plain meaning of section 101(23) of the Bankruptcy Code.

7.      United States Bankruptcy Courts, including those in this district, have routinely recognized English schemes of arrangement and their associated proceedings as "foreign proceedings" under the Bankruptcy Code.  *See, e.g., See In re Metinvest B.V.*, Case No. 16-10105 (LSS) (Bankr. D. Del. February 8, 2016); *In re Metinvest B.V.*, Case No. 16-11424 (LSS) (Bankr. D. Del. June 30, 2016); *In re Zodiac Pool Solutions, SAS, et al.*, Case No. 14-11818 (KJC) (Bankr. D. Del. August 29, 2014); *In re Hibu Inc., et al.,* Case No. 14-70323 (Bankr. E.D.N.Y. February 27, 2014); *In re Zlomrex International Finance S.A*., Case No. 13-14138 (Bankr. S.D.N.Y. January 31, 2014); *In re Magyar Telecom B.V.*, Case No. 13-13508 (Bankr. S.D.N.Y. December 11, 2013); *In re Tokio Marine Europe Ins. Ltd.*, Case No. 11-13420 (MG) (Bankr. S.D.N.Y. September 8, 2011); *In re Hellas Telecom. (Luxembourg) V*, Case No. 10-13651 (Bankr. D. Del. December 13, 2010).   Accordingly, the English Proceeding is precisely the sort of proceeding that chapter 15 was meant to assist, and a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

B.      This Case was Commenced by a "Foreign Representative"

8.      This chapter 15 case was commenced by the duly-appointed "foreign representative" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code. That section defines a "foreign representative," in pertinent part, as a "person or body… authorized in a foreign proceeding to administer the reorganization or the liquidation of the

debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). In this case, the Foreign Representative was authorized by the High Court in the Convening Order to act as the Debtor's foreign representative, which orders that the Foreign Representative "shall be appointed as foreign representative of the [Debtor] in any petition brought by the [Debtor] before the United States Bankruptcy Court for an order recognising the Scheme as a foreign proceeding and other related relief under Chapter 15 of the US Bankruptcy Code." Convening Order ¶ 28. The Court is entitled to presume that the representative identified in the Convening Order is a "foreign representative" under section 1516(a) of the Bankruptcy Code. Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

C.      This Case was Properly Commenced under Chapter 15

9.      The Foreign Representative duly and properly commenced this chapter 15 case, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing a petition for recognition of a foreign proceeding under section 1515(a) accompanied by all documents and information required by section 1515(b) and (c). *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."). Because the Foreign Representative has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced this chapter 15 case.

D.      The English Proceeding Should be Recognized as a Foreign Nonmain Proceeding

10.      The English Proceeding should be recognized as a "foreign nonmain proceeding," as defined in section 1502(5) of the Bankruptcy Code. Under section 1517(b) of the Bankruptcy Code, a foreign proceeding shall be recognized as a foreign nonmain proceeding

if it is located in a country where the debtor has an "establishment."  11 U.S.C. § 1517(b)(2).

Section 1502 of the Bankruptcy Code defines an "establishment" as "any place of operations

where the debtor carries out a nontransitory economic activity."  *See* 11 U.S.C. § 1502(2).  The

"establishment" requirement is satisfied by the local conduct of business.  *See In re Bear*

*Stearns*, 374 B.R. at 131; *In re Fairfield Sentry Ltd.*, No. 10-13164, 2011 U.S. Dist. LEXIS

105770 at *29 n.8 (S.D.N.Y. Sept. 15, 2011) (noting that debtor had "as an establishment . . . for

the conduct of nontransitory economic activity, i.e. a local place of business.").

　　　　11.　　The Debtor has numerous economic connections to the United Kingdom.

For example, the Debtor has a branch office, the Metinvest B.V. UK Branch (the "**UK Branch**"),

with operations in London.  The UK Branch:

- is registered at the Companies House of England and Wales;[6]

- has office space leased by the Debtor from SCM Advisors Limited located at 25 Park Lane, London, W1K 1RA, UK (the "**London Office**"), which lease includes the supply of utilities, necessary goods and services for the commercial operation of the London Office, including the procurement of office equipment, computers, and various telecommunications systems to integrate the UK Branch with the Metinvest Group and its global customer base;

- has a local bank account; and

- serves as the principal office for a Project Manager who provides corporate finance treasury services and additional services overseeing the restructuring and ongoing management of the Debtor's liabilities from the UK Branch pursuant to a service agreement between the Debtor and Metinvest International S.A., a Swiss subsidiary of the Debtor.

　　　　12.　　The Debtor also owns three English operating subsidiaries: Spartan UK

Limited, Metinvest Investments Limited, and Metinvest Capital UK Limited.  Further, all of the

Notes are governed by English law, the Trust Deeds and suretyships associated with the Notes

---

[6]　　　The UK Branch is registered with establishment number BR017685.

are also governed by English law, and the Trustees are located in London. Indeed virtually every aspect of the Notes is governed by English law. If there is a dispute over the Trustees' compensation, it is to be decided by an expert selected by the President of The Law Society of England and Wales. Moreover, the 2017 Notes and the 2018 Notes are governed by arbitration clauses calling for arbitration "under the London Court of International Arbitration, Arbitration Rules" and providing that the location of any arbitration "shall be London, England and the language of the arbitration shall be English." In addition, under the 2016 Notes and the 2018 Notes, the relevant Trustee has the option of proceeding by way of litigation, in place of arbitration. In connection with this option, the Debtor has irrevocably submitted to jurisdiction in England. Each of the PXF Facilities is governed by English law and the Debtor submits to the jurisdiction of the English courts. Under all four of the agreements, arbitration of any dispute is to be conducted in London, under the rules of the London Court of International Arbitration. In addition, all of the suretyships related to the PXF Facilities are governed by English law and incorporate the arbitration and jurisdiction clauses from the corresponding PXF Facility. Finally, the Foreign Representative was duly appointed by the High Court in London.[7] Accordingly, the Debtor maintains an "establishment" in England to support recognition of the English Proceeding as a "foreign nonmain proceeding."

E.       The Foreign Representative Is Entitled to an Order Granting Recognition of the English Proceeding as a Foreign Nonmain Proceeding

13.    As evidenced above, the English Proceeding is a "foreign nonmain proceeding" within the meaning of section 1502(5) of the Bankruptcy Code, the Foreign Representative applying for recognition is a "foreign representative" within the meaning of

---

[7]    *See also* Expert Report of Professor Stephen J. Lubben attached as <u>Exhibit D</u> to the *Declaration of Daniel J. Guyder In Support of Verified Petition for Recognition of Foreign Proceeding and Related Relief* filed contemporaneously herewith.

section 101(24) of the Bankruptcy Code, and the Chapter 15 Petition meets the requirements of section 1515 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if - (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515.  11 U.S.C. §1517(a).  *See also* H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting, in enacting chapter 15, that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition."). Accordingly, the Foreign Representative respectfully submits that the Court should enter an order recognizing the English Proceeding as a "foreign nonmain proceeding" pursuant to section 1517 of the Bankruptcy Code.

## II.
## THE FOREIGN REPRESENTATIVE IS ENTITLED
## TO AN ORDER ENFORCING THE SCHEME

14.    In connection with the recognition of the English Proceeding, the Foreign Representative further seeks an order giving full force and effect to the Scheme in the United States. The Foreign Representative respectfully submits that such relief is warranted under sections 105(a), 1507 and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

01:21440077.1

A.      The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the Bankruptcy Code

15.      Chapter 15 of the Bankruptcy Code embodies longstanding principles of international comity and cooperation that weigh heavily in favor of the enforcement of the Schemes in the United States. *See Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign bankruptcy proceedings."); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012) ("Central to Chapter 15 is comity."); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 626 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation.").   As courts have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'"  *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006).

16.      Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted).  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002). Bankruptcy courts in the United States hearing chapter 15 cases have therefore frequently

granted comity to orders issued in proceedings under the English Companies Act.  *See supra* Section I(A).

17.    In addition to general principles of comity, sections 1507 and 1521 of the Bankruptcy Code provide specific bases for a court overseeing a chapter 15 proceeding to provide additional relief to a foreign representative following the recognition of a foreign proceeding.  Section 1521 allows a court to grant "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations and provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. §§ 1521, 1522.  Section 1507 empowers a court to provide "additional assistance" to a foreign representative provided that such assistance, "consistent with the principles of comity," will reasonably assure:  (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.  11 U.S.C. § 1507.

18.    In *In re Vitro*, the Fifth Circuit Court of Appeals considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established an analytical framework for considering requests for relief under chapter 15.  *Vitro*, 701 F.3d at 1056.  Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521.  *Id.*  If it does not, then the court must consider whether the requested relief constitutes "appropriate relief" under section 1521(a),

01:21440077.1

14

which the *Vitro* court held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States. *Id.* Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under United States law, then a court must consider 1507, which allows for relief "more extraordinary" than that provided under section 1521.  *Id.* at 1057 (internal citations omitted).

B.     <u>Enforcement of the Scheme is Warranted under Section 1521 of the Bankruptcy Code</u>

19.     As described in greater detail in the Petition, the Scheme is intended to effect an amendment and extension (the "**Amendment and Extension**") of the Debtors' obligations in respect of the Notes and the PXF Facilities is not unlike a chapter 11 plan of reorganization that restructures a portion of the debtor's liabilities but leaves the rest unimpaired, and its enforcement in the United States constitutes "appropriate relief" within the meaning of section 1521.  The requested relief is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is a requisite to effect the Amendment and Extension and the fair administration of the Scheme.  Indeed, granting such relief would promote all of the legislatively enumerated objectives of 1501(a).

20.     It is essential that all Scheme Creditors are bound by the terms of the Scheme as approved and made effective by the High Court and the laws of England and Wales in order for the Scheme to be administered fairly and efficiently and to protect all parties in interest. As the U.S. Court of Appeals for the Second Circuit has recognized, "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987); *see also Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of

comity to a foreign proceeding enables the assets of a debtor to be dispersed in an equitable, orderly and systematic manner, rather than in a haphazard, erratic or piecemeal fashion."). The Supreme Court recognized the necessity of giving effect to foreign schemes of arrangement in order to further these goals, reasoning that

> [u]nless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.

*Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883). In the instant matter, there is a threat that Scheme Creditors could seek to obtain judgments in the United States against the Debtor in order to circumvent the terms of the Scheme. If such Scheme Creditors can effectively evade the terms of the Scheme by commencing actions in the United States, the Debtor would be required to defend any such proceedings depleting the resources of the restructured business and prejudicing the overall restructuring efforts. The relief requested is required to prevent individual creditors acting to frustrate the purposes of the Scheme, the foremost of which is the fair and efficient administration of the Amendment and Extension in order to maximize value for all stakeholders of the Debtor.

21. The enforcement of the Scheme also satisfies the requirements of section 1522 of the Bankruptcy Code because the interests of creditors and other interested entities, including the Debtor, are sufficiently protected thereunder. *See In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) ("Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another.").

The Foreign Representative believes that the Scheme is the most effective means of preserving the Debtor and its operating subsidiaries as going concerns to maximize value for the benefit of all stakeholders.  Further, the Scheme is limited to the Scheme Creditors, whose majority vote is required for the Scheme to be sanctioned and does not purport to affect any other creditors or counterparties of the Debtor.  Accordingly, there is no basis under section 1522 for denying the enforcement of the Scheme in the United States.

C.      The Enforcement of the Schemes is Warranted under Section 1507 of the Bankruptcy Code

22.      If the Court concludes that the enforcement of the Scheme is not warranted under section 1521 of the Bankruptcy Code, the Foreign Representative respectfully submits that such relief is warranted as "additional assistance" under section 1507, which empowers a court to grant relief in aid of a foreign proceeding beyond what might be available in a plenary case provided that certain considerations are satisfied.  *Vitro*, 701 F.3d at 1056.  The Foreign Representative submits that enforcing the Scheme is entirely consistent with the relevant considerations specified in section 1507:

- the English Proceeding ensures the just treatment of all holders of claims against or interests in the Debtor's property, as the Scheme only purports to restructure a subset of the Debtor's liabilities and the Amendment and Extension will be effected in accordance with the English Companies Act under the supervision of the High Court;

- it cannot be said that United States creditors would be inconvenienced by the Scheme in any respect as the Scheme only impacts the Notes and the PXF Facilities which are governed by English-law;

- there is no evidence that any preferential or fraudulent disposition of the Debtor's property is being made under the Scheme;

- the Amendment and Extension embedded in the Scheme will not distribute the proceeds of the Debtor's property in contravention of the order prescribed by the Bankruptcy Code, as it merely amends and extends the Debtors' obligations in respect of the Notes and the PXF Facilities and does not purport to affect any other creditors or counterparties; and

01:21440077.1

17

- the Scheme allows the Debtor to retain its going concern value, whereas absent the relief provided by the Amendment and Extension and the Scheme it would possibly need to commence formal insolvency or pre-insolvency proceedings in multiple jurisdictions, which could result in a substantial loss in value to all stakeholders.

23.    Further, as the Fifth Circuit observed in *Vitro*, relief granted in foreign insolvency proceedings may be enforced in the United States through section 1507 if it can be demonstrated that the requested relief "is substantially in accordance with the circumstances that would warrant such relief in the United States." *Vitro*, 701 F.3d at 1069.   In this case, the Scheme provide relief similar to relief under chapter 11 plans of reorganization which restructure a portion of the debtor's obligations while leaving the rest unimpaired, and is in some respects even less prejudicial to unaffected stakeholders because, unlike chapter 11 cases, the Scheme does not purport to impose any automatic stay or injunction on unaffected stakeholders that might affect a party's rights.   Further, the Scheme requires the support of more than 75% in value and more than 50% in number of Scheme Creditors to go into effect, which exceeds the thresholds for plan approval under section 1126 of the Bankruptcy Code.   The relief being sought is therefore similar to that available under chapter 11, and the Foreign Representative therefore respectfully submits that this Court is entitled to enforce the Scheme in the United States pursuant to section 1507 of the Bankruptcy Code.

D.    The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code

24.    Finally, the requested relief does not violate section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action in a chapter 15 case if such "action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.   The legislative history of section 1506 makes clear that the public policy exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States." *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing

H.R. REP. NO. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172).  *See also In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009).  *Cf. Hilton v. Guyot*, 159 U.S. 113 (1895) (holding that a foreign judgment should generally be accorded comity if "its proceedings are according to the course of a civilized jurisprudence").  Accordingly, courts have held that the public policy exception "should be interpreted restrictively" and that "a foreign judgment should generally be accorded comity if its proceedings are . . . fair and impartial."  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. at 90-91 (internal citations omitted) (affirming foreign judgment issued in the absence of a jury trial).  *See also In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (noting that "this public policy exception is narrowly construed" and enforcing broad third-party releases in Initial Order); *Iida v. Kitahara (In re Iida)*, 377 B.R. 243 (9th Cir. BAP 2007) ("This public policy exception is narrow and, by virtue of the qualifier 'manifestly,' is limited only to the most fundamental policies of the United States.").  Courts engaging in this analysis examine (i) whether the foreign proceeding was procedurally unfair and (ii) whether the application of foreign law would "'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights."  *In re Qimonda AG*, 433 B.R. 547, 569 (Bankr. E.D. Va. 2010) (citing *Gold & Honey, Ltd.*, 410 B.R. at 372).

25.    In the instant matter, the Foreign Representative requests (i) recognition of the English Proceeding as a "foreign nonmain proceeding," and (ii) enforcement of the Scheme in the United States.  It cannot be contended that mere recognition of the English Proceeding pursuant to chapter 15 of the Bankruptcy Code would violate the public policy of the United States.  Similarly, the enforcement of the Scheme would not violate the public policy of the

01:21440077.1

United States because, as discussed above, the Scheme authorizes relief that is consistent with relief available in plenary proceedings under the Bankruptcy Code.

26.     Accordingly, the Foreign Representative respectfully submits that this Court should give full force and effect to the Scheme in the United States upon the recognition of the English Proceeding.  Such relief would not be manifestly contrary to the public policy of the United States, as prohibited in section 1506.  Indeed, granting such recognition furthers the United States public policy respecting foreign proceedings as articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of the Bankruptcy Code.

[*Remainder of Page Intentionally Left Blank*]

01:21440077.1

## III.
## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Petition, and such other relief as the Court deems just and appropriate in the circumstances.

Dated: Wilmington, Delaware
      January 17, 2017

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

By: */s/ Joseph M. Barry*
Joseph M. Barry (Del. Bar No. 4221)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone (302) 571-6600
Facsimile (302) 571-1253
jbarry@ycst.com

-and-

**ALLEN & OVERY LLP**
Daniel Guyder
Mark Nixdorf
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
daniel.guyder@allenovery.com
mark.nixdorf@allenovery.com

*Attorneys for the Foreign Representative of the Debtor*

01:21440077.1